COURT OF APPEALS OF VIRGINIA


Present:   Judge Frank, Senior Judge Overton and Retired Judge Swersky[*]
Argued at Richmond, Virginia


THE CHESAPEAKE BAY FOUNDATION, INC. AND
 CITIZENS FOR STUMPY LAKE
                                                        OPINION BY
v.        Record No. 2298-04-2              JUDGE ROBERT P. FRANK
                                                        JULY 19, 2005
COMMONWEALTH OF VIRGINIA, *ex rel.*,
 VIRGINIA STATE WATER CONTROL BOARD,
 ROBERT G. BURNLEY, DIRECTOR,
 VIRGINIA DEPARTMENT OF ENVIRONMENTAL QUALITY AND
 TRI-CITY PROPERTIES, L.L.C.


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Randall G. Johnson, Judge

          Robert L. Wise (Christopher C. Spencer; Bowman and Brooke, LLP,
          on briefs), for appellants.

          Robert F. McDonnell (Paul R. Schmidt; Huff, Poole & Mahoney,
          P.C., on brief), for appellee Tri-City Properties, L.L.C.

          John K. Byrum, Jr., Assistant Attorney General (Jerry W. Kilgore,
          Attorney General; Roger L. Chaffe, Senior Assistant Attorney
          General, on brief), for appellee Commonwealth of Virginia, *ex rel.*,
          State Water Control Board, Robert G. Burnley, Director,
          Department of Environmental Quality.


        This appeal arises out of the State Water Control Board's (Board) issuance of a Virginia

Water Protection Permit to Tri-City Properties (Tri-City) that would allow Tri-City to develop a

residential and commercial development immediately adjacent to the public Stumpy Lake Nature

Preserve.  Chesapeake Bay Foundation (CBF) and Citizens for Stumpy Lake (CFSL), appellants,

timely appealed the Board's issuance of this permit to the Circuit Court of the City of Richmond.

_____

          [*] Retired Judge Alfred D. Swerksy took part in consideration of this case by designation
pursuant to Code § 17.1-400.

The Commonwealth, on behalf of the Board and Department of Environmental Quality, along with Tri-City, filed demurrers, arguing that CBF and CFSL lacked standing to bring the appeal. The court sustained the demurrers, holding that Virginia does not recognize representational standing and that CBF and CFSL lacked standing in their own right to bring the appeal.

CBF and CFSL appealed to this Court. For the reasons that follow, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. BACKGROUND

Because the circuit court decided the matters upon demurrer, we shall recite the facts alleged, and all reasonable inferences flowing from those facts, as though they are true, in accordance with settled principles of appellate review. Mattaponi Indian Tribe v. Commonwealth, 261 Va. 366, 370, 541 S.E.2d 920, 922 (2001).

CBF is a non-profit organization founded in 1966 under the laws of Maryland to restore and sustain the Chesapeake Bay ecosystem. CBF has approximately 40,000 members in Virginia.

CFSL is a non-profit association founded in 1998 and is comprised of residents of Virginia Beach, Chesapeake, and Norfolk in the areas surrounding and in close proximity to Stumpy Lake and the Stumpy Lake Nature Preserve in Virginia Beach. Concerned citizens formed CFSL when Transamerica Services, Inc., and others, were attempting to purchase Stumpy Lake and its surrounding lands for development. The original goal of CFSL was to preserve Stumpy Lake from development.

Roy Hoagland, Virginia Executive Director of CBF, stated in an affidavit that CBF conducts a Clean the Bay Day in Virginia Beach and in the City of Chesapeake. Clean the Bay Day is a trash clean-up project in which thousands of CBF members and volunteers remove trash from streams, rivers, parks, and other areas. Stumpy Lake is a Clean the Bay Day site.

Hoagland alleged that the proposed issuance of this permit and the subsequent development by Tri-City would impact CBF's ability to successfully conduct the Clean the Bay Day program. Hoagland further averred that CBF maintains an Environmental Education Program (EEP) and "each year takes over 36,000 people out in canoes and workboats that serve as floating classrooms for Chesapeake Bay." Included in the EEP are oyster restoration activities in the Lynnhaven and Elizabeth Rivers. Students and adults pay a fee for participating in EEP, and CBF relies on receipt of those payments "as part of its economic viability."

William Pratt, President of Citizens for Stumpy Lake, stated in his affidavit that CFSL members enjoy the "multitude of wildlife Stumpy Lake hosts." He, along with other members, walks its shoreline, enjoys its pristine qualities and plans to enjoy the Preserve in the future. Stumpy Lake provides an essential function in flood prevention.

Additionally, appellants filed two affidavits from members of the CBF and two affidavits from the CFSL.[1] One member of CBF visits the Stumpy Lake area at least once a year. She

---

[1] Appellee Tri-City suggests that because the affidavits were not attached to the Petition for Appeal in the court below, they were "improperly offered for the first time via Appellant's Brief in Opposition of the Commonwealth's Demurrer and Motion to Dismiss." We find that the argument that the affidavits were not formally accepted into evidence by the trial court is without merit. In Concerned Taxpayers of Brunswick County v. Department of Environmental Quality, 31 Va. App. 788, 525 S.E.2d 628 (2000), rev'd on other grounds, Aegis Waste Solutions v. Concerned Taxpayers of Brunswick County, 261 Va. 395, 544 S.E.2d 660 (2001), this Court cited with approval the following passage from Warth v. Seldin, 422 U.S. 490 (1975):

> For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, *by amendment to the complaint or by affidavits*, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

31 Va. App. at 796-97, 525 S.E.2d at 632 (quoting 422 U.S. at 501-02) (emphasis added).

enjoys walking and bird watching. Another CBF member also enjoys bird watching and hiking in the Stumpy Lake area and visits at least twice a year.

One member of CFSL frequently enjoys the recreational uses and wildlife at Stumpy Lake. He has been a member of the Stumpy Lake Golf Course for thirty years and plays an average of twice a week. He enjoys the peaceful atmosphere and clean air of the Stumpy Lake area. Another CFSL member also enjoys the natural beauty of the Stumpy Lake area and spends time viewing the wildlife, which includes turtles, deer, fox, and bald eagles.

The trial court held that the plain language of Code § 62.1-44.29 does not confer representational standing to either appellant. In finding that neither appellant is "aggrieved," the court cited from Pearsall v. Virginia Racing Commission, 26 Va. App. 376, 381, 494 S.E.2d 879, 882 (1998):

> The Association neither owns nor occupies any real property. No personal or property right of the Association was adjudicated by the Commission. The Commission did not order the Association to act or to refrain from acting. Nothing in the record suggests that the Association holds any right that will be affected by the outcome of this case. We agree with the trial court's finding that the Association was not a "person aggrieved" under the statute.

The trial court further found that neither CBF nor CFSL could maintain the appeal in its own right. The court, quoting State Water Control Board v. Crutchfield, 265 Va. 416, 427, 578 S.E.2d 762, 768 (2003), recognized that "in 'environmental cases,' it generally is sufficient if a plaintiff establishes that he uses the affected area, and that he is a person 'for whom the aesthetic and recreational values of the area will be lessened' by the defendant's actions." The court then found that appellants did not allege sufficient injury in this case.

> [I]f all that is required to establish standing is use of the waterway or surrounding area in question, Crutchfield's observation that the Article III "injury in fact" requirement "precludes a plaintiff from alleging a generalized grievance to vindicate an interest shared by the entire public" is meaningless since there are few people who do not have at least some aesthetic or recreational interest in the

- 4 -

environment. The court believes that more is required than what appellants have shown here. They do not have standing.

This appeal followed.

## II. ANALYSIS

### A. Demurrer

A demurrer admits the truth of all facts alleged in a motion for judgment but does not admit the correctness of the pleader's conclusions of law. Blake Constr. Co. v. Upper Occoquan Sewage Auth., 266 Va. 564, 570-71, 587 S.E.2d 711, 714-15 (2003); Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001). The function of a demurrer is to test the legal sufficiency of the facts alleged. Glazebrook v. Bd. of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Because our review of a circuit court's decision sustaining a demurrer addresses that same legal question, we review the circuit court's judgment *de novo.* Filak v. George, 267 Va. 612, 617-18, 594 S.E.2d 610, 613 (2004).

### B. Representational Standing

Appellants first contend that the trial court erred in holding that the plain language of Code § 62.1-44.29 did not confer representational standing to appellants. The court reasoned that neither CBF nor CFSL were "aggrieved" under Virginia standards.

The State Water Control Law's (SWCL) judicial review provision provides:

> Any owner aggrieved by, or any person who has participated, in person or by submittal of written comments, in the public comment process related to, a final decision of the Board under §§ 62.1-44.15(5), 62.1-44.15(8a), (8b), and (8c), 62.1-44.15:5, 62.1-44.16, 62.1-44.17, 62.1-44.19 or § 62.1-44.25, whether such decision is affirmative or negative, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution. A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized;

(ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

Code § 62.1-44.29.

Prior to 1996, the only party who could appeal the issuance of a permit pursuant to this statute was an owner aggrieved by the Board's decision. When the General Assembly added the Article III language to Code § 62.1-44.29 in 1996, the legislature broadened the allowance for judicial review from the narrow "owner aggrieved" standard to the more encompassing "case-or-controversy" requirements of Article III of the United States Constitution. Appellants argue that under this Article III analysis, the statute automatically and implicitly confers standing to an organization in a representational capacity. Contending that is not the case, appellees respond that Virginia recognizes representational standing only when specifically authorized by statute, which is not the case here.

The constitutional Article III requirements are set out in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). First, there has to be an injury in fact. This injury must be (a) concrete and particularized, and (b) actual or imminent. Next, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely that the injury would be redressed by a favorable decision. The parties to this appeal do not challenge the second and third prongs and argue only injury in fact.

Federal courts have long recognized representational standing. In Sierra Club v. Morton, 405 U.S. 727 (1972), representatives of the Sierra Club challenged the United States Forest Service's decision to allow Disney Corporation to develop the Mineral King Valley in the Sequoia National Forest into a multi-million dollar complex of motels, restaurants, swimming pools, parking lots, ski slopes, lodges, and other structures designed to accommodate 14,000

visitors daily.  The Supreme Court was called upon to decide whether the Sierra Club could

obtain judicial review of that decision on behalf of its members.  The Court held:

> The trend of cases arising under the APA and other statutes authorizing judicial review of federal agency action has been toward recognizing that injuries other than economic harm are sufficient to bring a person within the meaning of the statutory language, and toward discarding the notion that an injury that is widely shared is *ipso facto* not an injury sufficient to provide the basis for judicial review.  We noted this development with approval in <u>Data Processing [v. Camp]</u>, 397 U.S. [150,] 154 [(1970)], in saying that the interest alleged to have been injured "may reflect 'aesthetic, conservational, and recreational' as well as economic values."  But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.
>
> Some courts have indicated a willingness to take this latter step by conferring standing upon organizations that have demonstrated "an organizational interest in the problem" of environmental or consumer protection.  It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review.

<u>Id.</u> at 738-39 (citations omitted).

In <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975), the Supreme Court further clarified the

requirements of representational standing:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members.  The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy.  The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justifiable case had the members themselves brought suit.  So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

(Citations omitted).

In Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977), the Supreme Court developed a three-prong test for associational standing based on the holding in Warth. The Court stated an association has Article III standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343.

This Court recognized representational standing in Concerned Taxpayers of Brunswick County v. Department of Environmental Quality, 31 Va. App. 788, 525 S.E.2d 628 (2000), rev'd on other grounds, Aegis Waste Solutions v. Concerned Taxpayers of Brunswick County, 261 Va. 395, 544 S.E.2d 660 (2001). Members of the Concerned Taxpayers Association appealed the decision by the Department of Environmental Quality to issue a permit to operate a solid waste landfill under the Solid Waste Management Act (SWMA). The SWMA's judicial review provision was almost identical to SWCL's and provided that a "person" shall meet the standard for obtaining judicial review if such person meets the standard under Article III.[2] The taxpayers

_____

[2] Code § 10.1-1457(B) set forth the requirements for judicial review under the Virginia Waste Management Act. It stated:

> Any person who has participated, in person or by the submittal of written comments, in the public comment process related to a final decision of the Board or Director under § 10.1-1408.1 or § 10.1-1426 and who has exhausted all available administrative remedies for review of the Board's or Director's decision, shall be entitled to judicial review thereof in accordance with the Administrative Process Act (§ 9-6.14:1 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution. A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some

alleged immediate or threatened injury as a result of the challenged action. Citing Warth, this Court held that under an Article III test, the Association could be an appropriate representative of its members and was entitled to invoke the court's jurisdiction. Thus, this Court found that pursuant to Code § 10.1-1457(B) of the Virginia Waste Management Act, the appellant there had representational standing to sue the Department of Environmental Quality.[3]

The statute under review here is identical, for purposes of standing, to the statute at issue in Concerned Taxpayers. As we stated in Concerned Taxpayers, Code § 62.1-44.29 merely reiterates the requirements set out in Lujan. Therefore, fulfillment of the tests set forth in Lujan and Hunt results in satisfaction of the standing requirement under Code § 62.1-44.29. See Concerned Taxpayers, 31 Va. App. at 796, 525 S.E.2d at 632. Therefore, we find that Code § 62.1-44.29 authorizes CBF and CFSL to bring suit on behalf of its members in a representational capacity if they satisfy the requirements under Article III.

Appellees argue that Pearsall controls because Pearsall can be interpreted as holding that Virginia does not recognize representational standing unless authorized by statute.

In Pearsall, the Monument Avenue Park Association, along with Pearsall, challenged a decision by the Virginia Racing Commission to grant a license to operate an off-track betting parlor near Pearsall's and other Association's members' homes. The trial court held that the Association did not have standing to pursue the appeal and that neither Pearsall nor the Association was a "person aggrieved." 26 Va. App. at 376, 494 S.E.2d at 881. On appeal, this

---

third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

[3] Appellees claim Concerned Taxpayers lacks precedential value because the Supreme Court reversed it on other grounds in Aegis Waste Solutions v. Concerned Taxpayers of Brunswick County, 261 Va. 395, 544 S.E.2d 660 (2001). We disagree. Aegis did not address the issue of standing, expressly declining to do so in footnote 2. Because that issue was not appealed, we are bound to follow its precedent.

Court held that the Association did not have standing because it did not own or occupy any real property. Id. at 381, 494 S.E.2d at 882. This Court further refused to recognize the Association's right to pursue the appeal based upon representational standing, holding that the statute does not specifically authorize it. Id. at 383, 494 S.E.2d at 883.

The appeal in Pearsall was governed by Code § 59.1-373, which provides for a "person aggrieved" analysis. The judicial review provision under scrutiny in Pearsall does not include the broad Article III standing, and therefore the review of that statute is immaterial to the review of the statute at issue here. Additionally, Pearsall did not involve the SWCL or environmental issues. Thus, Pearsall does not control resolution of the issues presented by this appeal.

That said, the first prong of the test for associational standing requires that members of the association have standing to sue in their own right. See Hunt, 432 U.S. at 343. In United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555 (1996), the Court stated that this prong requires "at least one member with standing to present, in his or her own right, the claim . . . pleaded by the association." Therefore, at least one member of the association, but not all of the members, must satisfy the Lujan test for Article III standing. See Concerned Taxpayers, 31 Va. App. at 796, 525 S.E.2d at 632.

The Lujan test first requires that the injury be "concrete and particularized" and "imminent," not "hypothetical." Lujan, 504 U.S. at 560. Crutchfield established the touchstone in Virginia for "injury in fact." For purposes of Article III standing, the "injury in fact" that must be established in a case involving a plaintiff's recreational and aesthetic interests is not injury to the environment, but injury to the plaintiff. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); Piney Run Pres. Ass'n v. County Comm'rs., 268 F.3d 255, 263 (4th Cir. 2001), cert. denied, 535 U.S. 1077 (2002). This requirement precludes a plaintiff from alleging a generalized grievance to vindicate an interest shared by the entire

- 10 -

public.  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000).

A plaintiff must show that the alleged injury will affect him in a personal and individual manner.  Lujan, 504 U.S. at 560 n.1; Gaston Copper Recycling Corp., 204 F.3d at 156.  However, the claimed injury need not be a large one, and an "identifiable trifle" will be sufficient to meet the "injury in fact" requirement.  LaFleur v. Whitman, 300 F.3d 256, 270-71 (2d Cir. 2002); Gaston Copper Recycling Corp., 204 F.3d at 156; Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 557 (5th Cir. 1996).  Thus, in "environmental cases," it generally is sufficient if a plaintiff establishes that he uses the affected area and that he is a person "'for whom the aesthetic and recreational values of the area will be lessened'" by the defendant's actions.  Laidlaw Envtl. Servs., 528 U.S. at 183 (quoting Morton, 405 U.S. at 735); accord Piney Run Pres. Ass'n, 268 F.3d at 263.  "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."  Lujan, 504 U.S. at 562-63.

In Laidlaw Envtl. Servs., the Supreme Court found that the relevant showing for purposes of Article III standing is not injury to the environment, but injury to the plaintiff.  528 U.S. at 199.  The South Carolina Department of Health and Environmental Control issued a permit to Laidlaw to discharge treated water into the Tyger River.  Laidlaw began to discharge various pollutants into the waterway, some being extremely toxic, and repeatedly exceeding the limits set by the permit.  Id. at 175-76.  Friends of the Earth (FOE) and Citizens Local Environmental Action Network (CLEAN) filed a lawsuit against Laidlaw, alleging noncompliance with the permit and seeking declaratory and injunctive relief and an award of civil penalties.  Id. at 177.  Laidlaw moved for summary judgment on the ground that FOE lacked Article III standing to bring the lawsuit.  Id.

One FOE member averred in affidavits that he used to swim, fish, camp, and picnic near the river. He could no longer engage in these activities because of the smell of pollution. Other FOE and CLEAN members attested that they no longer enjoyed the river because of the fear that the water contained harmful pollutants. The Supreme Court found that "the affidavits and testimony presented by FOE in this case assert that Laidlaw's discharges, and the affiant members' reasonable concerns about the effects of those discharges, directly affected those affiants' recreational, aesthetic, and economic interests." Id. at 183-84. The Court determined that the sworn statements adequately documented injury in fact for purposes of meeting the requirements of representational standing. Id. at 183.

The trial court here held that "[t]he plain language of the statute shows that standing to seek judicial review of a decision of the Board is not conferred on persons in a representative capacity." In so doing, the trial court never addressed whether appellants alleged sufficient injury to confer standing on a member of the CBF or CFSL in a personal and individual manner. Having found that Virginia recognizes representational standing pursuant to Concerned Taxpayers and that Code § 62.1-44.29 confers this representational standing, we remand for the trial court to determine whether appellants alleged sufficient facts to allow for judicial review pursuant to Code § 62.1-44.29.

### C. Standing To Sue In Its Own Right

Appellants next contend they have standing to sue in their own right. Appellees respond that neither CBF nor CFSL has shown sufficient injury to the organizations to establish standing. The trial court determined that because neither CBF nor CFSL owns real or personal property that will be adversely affected by the Board's decision, neither could maintain an appeal in its own right. The court discussed Crutchfield and found that "injury in fact" means more that just a

generalized grievance shared by the entire public because "there are few people who do not have at least some aesthetic or recreational interest in the environment."

The SWCL provides that an aggrieved owner, or any person who has participated, either in person or by the submission of written comments, in the public comment process related to a final decision of the Board under Code § 62.1-44.15(5) is entitled to judicial review of that decision "if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution." Code § 62.1-44.29.

Appellant CBF contends it has standing to challenge the Board's grant of a permit to Tri-City because CBF conducts a Clean the Bay Day and this activity confers standing. CBF asserts, "CBF has a significant financial interest in Clean the Bay Day including but not limited to a dedicated staff person, promotional materials, and contractual relationships with local governments and local civic organizations." CBF also conducts EEPs within the Bay and relies on income generated from these programs for its economic viability.

In W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 478 S.E.2d 295 (1996), an association of home builders brought a suit for declaratory judgment seeking invalidation of county ordinances that increased building permit fees. Id. at 379, 478 S.E.2d at 297. The Virginia Supreme Court held that the association lacked standing because it had failed to show that its own rights would be affected by the outcome of the proceeding. The Court noted that the association neither built houses nor paid building permit fees.

> A plaintiff has standing to institute a . . . proceeding if it has a "justiciable interest" in the subject matter of the proceeding, either in its own right or in a representative capacity. Henrico County v. F. & W., Inc., 222 Va. 218, 223, 278 S.E.2d 859, 862 (1981); Lynchburg Traffic Bureau v. Norfolk and Western Railway, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966). In order to have a "justiciable interest" in a proceeding, the plaintiff must demonstrate an actual controversy between the plaintiff and the defendant, such that his rights will be affected by the outcome of

> the case. See Code § 8.01-184; Cupp v. Board of Supervisors, 227
> Va. 580, 589, 318 S.E.2d 407, 411 (1984).

Id. at 383, 478 S.E.2d at 299.

While appellant cites Clean the Bay Day as injury in fact to the CBF, we find that appellant fails to allege how the issuance of the permit to Tri-City will impact this program. Paragraph 4 of Hoagland's affidavit alleges that Stumpy Lake is a Clean the Bay Day site and that "CBF has a significant financial interest in Clean the Bay Day." However, the affidavit does not allege facts to sufficiently support this conclusion.

> It is well settled that while a demurrer admits as true all averments of material facts which are sufficiently pleaded, it does not admit the correctness of the conclusions of law stated by the pleader. Nor does a demurrer admit "inferences or conclusions from facts not stated."

Arlington Yellow Cab v. Transportation, Inc., 207 Va. 313, 318-19, 149 S.E.2d 877, 881-82 (1966) (citations omitted). Here, we must make "speculative inferences" in order to accept appellant's argument. See Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 45 (1976) (finding that there was no injury because speculative inferences were necessary to connect respondent's injury to the challenged actions of petitioners). Having cited only conclusions, we cannot determine from the affidavit how the rights of CBF will be affected by the issuance of the permit.

Additionally, allegations contained in paragraph 11 reference CBF's ability to conduct the Clean the Bay Day. "The destruction of protected wetlands in that area will . . . diminish the members [sic] and volunteers' enjoyment of the areas' natural resources during their clean up efforts." Indeed, CBF relies upon the purported injury to others resulting from the Board's issuance of the permit to Tri-City. We therefore conclude that the allegations contained therein pertain, at best, to injury to the members themselves, and not to the association. See Carnes, 252

Va. at 383, 478 S.E.2d at 299 (holding individual plaintiff corporation had standing based upon existing controversy with the county, but the homebuilder's organization, itself, did not).

CBF has also alleged that it maintains an EEP that educates people, for a fee, about the Chesapeake Bay, including oyster restoration activities in the Lynnhaven and Elizabeth Rivers. While we acknowledge that CBF alleges that the association depends on the fees generated by the EEP for "part of its economic viability," CBF fails to demonstrate how the proposed development will affect the EEP. Again, because we cannot determine from the affidavits what impact, if any, the issuance of the permit would have on the CBF, we find that CBF has not demonstrated standing in their own right to maintain suit against appellees.[4]

Appellant CFSL also maintains it has standing to sue in its own right. Appellant alleges that CFSL was formed to prevent Virginia Beach from rezoning the property from preservation to residential uses. If this permit is allowed to stand, claims CFSL, then the existence of the association will be threatened. "If there is no Stumpy Lake as its members know it, there is no Citizens for Stumpy Lake." While appellant's allegations, taken as true, indicate that they advocate for environmental concerns, we find that CFSL fails to allege any facts that provide a nexus between the issuance of the permit and a threat to CFSL's existence.

William Pratt, president of CFSL, alleged that CFSL was formed in 1998 with the goal of preventing the City of Virginia Beach from rezoning the property from preservation to residential uses and to prevent the City of Chesapeake from rezoning its surrounding areas

---

[4] The trial court found appellant CBF did not have actual standing because the organization did not own real or personal property that would be adversely affected by the Board's decision and that CBF had no pecuniary interest in the area. While we now affirm on the ground that appellant CBF alleged only conclusions of injury and no facts in support thereof, we note that this argument was made to the trial court by Tri-City. We, therefore, find that the trial court reached the right result, but for the wrong reason. See Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) (holding that an appellate court may affirm the trial court when it reached the right result for the wrong reason when the right reason was raised at trial).

- 15 -

adjacent to Stumpy Lake from agricultural to residential uses. CFSL's efforts to preserve Stumpy Lake have been extensive, including distribution of pamphlets, demonstrations, and extensive communication with local government and civic organizations. It is apparent from the allegations presented in the petition and affidavits that the purpose and goal of CFSL is to preserve the Stumpy Lake area from present and future development and destruction.

CFSL argues that standing is conferred simply on the basis of promoting the goal of preserving Stumpy Lake. However, CFSL never alleges any facts from which we can conclude that CFSL will be eliminated by the issuance of the permit. While appellants contend on brief that the injury to CFSL is frustration of its mission, we find nothing in the affidavits to support this argument.[5]

Appellant relies on Hunt. Hunt involved a Washington State Apple Grower's Commission asserting standing to challenge a North Carolina statute. The Court agreed they had representational standing, noting that the Washington commission could be financially affected by the reduction in receipt of annual assessments if North Carolina passed the statute in controversy. 432 U.S. at 345. Here, appellant CFSL compares the potential loss of revenue, which could jeopardize the well-being of the Washington commission, to the loss that would be suffered by the association CFSL. We disagree.

While we agree with the rationale in Hunt, the facts of this case defeat appellant's argument. First, CFSL does not allege, nor does it argue, financial loss. More importantly, CFSL fails to allege injury threatening the viability of their organization. As this is the sole

---

[5] We do not address whether a threat to an organization's viability is sufficient injury to confer standing.

injury argued by CFSL, we find that the omission of this allegation from the affidavits is fatal to CFSL's claim for standing.[6]

Accordingly, we find that neither CBF nor CFSL have standing to sue in their own right. The judgment of the trial court, as to these issues, is affirmed.

CONCLUSION

For the foregoing reasons, we find that Code § 62.1-44.29 permits an organization to sue on behalf of its members. We remand to the trial court for a determination whether the appellants have met the requirements of representational standing consistent with this opinion. We further find that neither CBF nor CFSL have satisfied the requirements for standing to sue in their own right. Accordingly, we affirm in part, and reverse and remand in part.

Affirmed, in part,
reversed and
remanded, in part.

---

[6]The trial court found appellant CFSL did not have actual standing because the organization did not own real or personal property that would be adversely affected by the Board's decision and that CFSL had no pecuniary interest in the area. While we now affirm on the ground that appellant CFSL did not allege injury in the affidavits, we note that this argument was made to the trial court by Tri-City. We, therefore, find that the trial court reached the right result, but for the wrong reason. Driscoll, 14 Va. App. at 452, 417 S.E.2d at 313.