COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Powell and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


THE CHESAPEAKE BAY FOUNDATION, INC.
                                                            OPINION BY
v.        Record No. 1471-09-2                    JUDGE ROBERT P. FRANK
                                                            JULY 20, 2010
COMMONWEALTH OF VIRGINIA, *ex rel.*
  VIRGINIA STATE WATER CONTROL BOARD,
  DAVID K. PAYLOR, DIRECTOR, DEPARTMENT OF
  ENVIRONMENTAL QUALITY AND TRI-CITY PROPERTIES, L.L.C.

                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Margaret P. Spencer, Judge

                Robert L. Wise (Christina A. MacIsaac; David E. Gluckman;
                Bowman and Brooke, LLP, on briefs), for appellant.

                John R. Butcher, Special Assistant Attorney General; Paul R.
                Schmidt (William C. Mims, Attorney General; Roger L. Chaffe,
                Senior Assistant Attorney General; Huff, Poole & Mahoney, P.C., on
                brief), for appellees.


        The Chesapeake Bay Foundation, Inc. (CBF), appeals a decision of the circuit court

finding that it had no representational standing to appeal a permit granted to Tri-City Properties,

L.L.C. (Tri-City) by the Virginia State Water Control Board (the Board).[1]  The circuit court

granted appellees' motion to dismiss as to CBF.  The court found that because CBF failed to

allege or provide affidavits to show that at least one of its individual members participated in the

public comment process, it had not established representational standing.[2]  For the reasons

stated, we find the trial court erred.

        _____

        [1] Tri-City Properties, L.L.C. and the Virginia State Water Control Board will be
collectively referred to as appellees unless otherwise noted.

        [2] While this is an interlocutory appeal, this Court has jurisdiction over the case under the
"severable interests" rule first enunciated in Wells v. Whitaker, 207 Va. 616, 628-29, 151 S.E.2d

As a preliminary matter, although this appeal was originally filed as a motion to dismiss, it attacks the sufficiency of the pleadings and is essentially a demurrer.

> A demurrer admits the truth of the facts alleged in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those facts. Accordingly, in reviewing the judgment of the circuit court, an appellate court looks solely to the allegations in the pleading to which the demurrer was sustained. Moreover, because the issues in this case present pure questions of law, we do not accord a presumption of correctness to the judgment below, but review the issues *de novo*.

Philip Morris v. The Chesapeake Bay Foundation, 273 Va. 564, 572, 643 S.E.2d 219, 223 (2007) (citations omitted).

On appeal in this matter, we again visit CBF's representational standing. The Board issued a Virginia Water Protection Permit to Tri-City on October 28, 2003, allowing for the development of a residential and commercial project immediately adjacent to the public Stumpy Lake Nature Preserve. CBF and Citizens for Stumpy Lake (CFSL), both non-profit associations, timely appealed the issuance of the permit to the Circuit Court of the City of Richmond. The Board and Tri-City demurred, contending neither CBF nor CFSL had either individual or representational standing to appeal the Board's decision.

The trial court sustained the demurrer, holding that the Commonwealth does not recognize representational standing. That issue was appealed to this Court, and in Chesapeake Bay Foundation, Inc. v. Commonwealth ex. rel. Va. Water Control Bd., 46 Va. App. 104, 616 S.E.2d 39 (2005) (hereafter Stumpy Lake I), we held that representational standing does lie in the

---

422, 432-33 (1966). "Under this rule, a final adjudication of a collateral matter that addresses separate and severable interests can be appealed only when the appeal cannot affect the determination of the remaining issues in the case, even if the adjudication is reversed." Thompson v. Skate America, Inc., 261 Va. 121, 127, 540 S.E.2d 123, 129 (2001).

Commonwealth. We remanded to the trial court for a determination of whether the appellants had met the requirements of representational standing.

Upon remand, appellees jointly moved to dismiss CBF and CFSL's appeal based on appellants' failure to plead that any of appellants' individual members participated in the public comment process.[3] The trial court denied the motion to dismiss as to CFSL. However, the trial court granted the motion as to CBF, concluding that CBF did not allege that a member of that organization participated in the public comment process. The trial court thus concluded that CBF had no representational standing to pursue its appeal.

This appeal follows.

ANALYSIS

Appellant contends the trial court erred in requiring it to allege participation of at least one member in the public comment process. It maintains the trial court erroneously grafted a new prong onto the Article III requirements to establish representational standing. We agree.

The questions of whether or not a litigant has standing is a question of law subject to *de novo* review on appeal. See Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008).

While this Court and the Supreme Court of Virginia have previously upheld the concept of representational standing, the issue now before us, concerning the public comment process, has not yet been addressed. However, the prior decisions of this Court and the Supreme Court of Virginia are relevant to this analysis.

In Concerned Taxpayers v. Dept. of Environmental Quality, 31 Va. App. 788, 525 S.E.2d 628 (2000) (reversed on other grounds by Aegis Waste Solutions, Inc. v. Concerned Taxpayers of Brunswick Cty., 261 Va. 395, 544 S.E.2d 660 (2001)), we reviewed the three requirements,

---

[3] It is not disputed that CBF and CFSL participated in the public comment process.

enunciated in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992), for Article III standing:

> First, the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . . Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Concerned Taxpayers</u>, 31 Va. App. at 795, 525 S.E.2d at 631 (alterations in original) (citations omitted).

In <u>Warth v. Seldin</u>, 422 U.S. 490 (1975), the United States Supreme Court had addressed the Article III standing requirements for associations. The Court held that an association may have standing, even without injury to itself, but that the association

> must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. So long as this can be established, and so long as the nature of the claim and the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

<u>Id.</u> at 511 (citation omitted).

Two years later, the United States Supreme Court developed a three-prong test for associational standing based on the holding in <u>Warth</u>. The Court stated an association has Article III standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Hunt v. Washington State Apple</u>

- 4 -

Advertising Comm'n, 432 U.S. 333, 343 (1977) (superseded on other grounds by United Food & Commer. Workers Union Local 751 v. Brown Group, 517 U.S. 544 (1996)).

In Concerned Taxpayers, we explored that three-prong test, noting that the first prong for representational standing requires that members of the association have standing to sue in their own right. We concluded "at least one member of the association . . . must satisfy the Lujan test for Article III standing." Concerned Taxpayers, 31 Va. App. at 796, 525 S.E.2d at 632.

In Stumpy Lake I, we noted that Code § 62.1-44.29 encompasses the United States Constitution's Article III requirements to establish standing, repeating our finding from Concerned Taxpayers that "Code § 62.1-44.29 merely reiterates the requirements set out in Lujan." Stumpy Lake I, 46 Va. App. at 115, 616 S.E.2d at 45.

Code § 62.1-44.29 provides:

> Any owner aggrieved by, or any person[4] who has participated, in person or by submittal of written comments, in the public comment process related to a final decision of the Board under § 62.1-44.15(5), 62.1-44.15(8a), (8b), and (8c), 62.1-44.15:20, 62.1-44.15:21, 62.1-44.15:22, 62.1-44.15:23, 62.1-44.16, 62.1-44.17, 62.1-44.19, or 62.1-44.25, whether such decision is affirmative or negative, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution. A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.[5]

---

[4] Appellees do not contend CBF is not a "person" under Code § 62.1-44.29. A "person" is an "individual, corporation, partnership, association, government body, municipal corporation, or any other legal entity." Code § 62.1-44.3.

[5] The parties do not challenge that CBF made sufficient allegations to satisfy the Article III representational standing requirements.

In Stumpy Lake I, we concluded an organization may sue on behalf of its members, holding that "fulfillment of the tests set forth in Lujan and Hunt results in satisfaction of the standing requirement under Code § 62.1-44.29." Stumpy Lake I, 46 Va. App. at 115, 616 S.E.2d at 45. We concluded that under that statute, an association may "bring suit on behalf of its members in a representational capacity if they satisfy the requirements under Article III." Id. We recently re-affirmed this position when we found that, in determining whether an individual member of the association has standing to sue in his own right, we look only to the three-part test for Article III standing under Lujan.[6] Chesapeake Bay Foundation v. Va. State Water Control Bd., 52 Va. App. 807, 830, 667 S.E.2d 844, 856 (2008).

The Supreme Court of Virginia later agreed with this Court that representational standing is recognized in Virginia. In Philip Morris, 273 Va. 564, 643 S.E.2d 219, the Supreme Court of Virginia discussed the first prong of representational standing, i.e. that the association include "'at least one member with standing to present, in his or her own right, the claim pleaded by the association,'" id. at 577, 643 S.E.2d at 226 (quoting United Food & Commercial Workers Union, 517 U.S. at 555), explaining that the first prong "is simply a requirement that any claim of standing be fundamentally based on the individual standing test laid out in Lujan the requirements of which are reiterated in Code § 62.1-44.29," id.

Appellees argue, in support of the trial court's holding, that in order for an association to have representational standing, its members must otherwise have standing to sue in their own right. Because Code § 62.1-44.29 requires participation in the public comment process, appellees conclude that at least one member of the organization must have participated in the

---

[6] It is important to note that Lujan does not require individual member participation in the public comment process.

public comment process. Thus, appellees argue, CBF, in failing to allege that participation, does not have representational standing.

However, to accept appellees' argument would add an additional prong to the Article III and <u>Lujan</u> requirements. We decline that invitation. We are not prepared, nor are we permitted, to expand the scope of the requirements for representational standing. The purpose of the Article III requirements is to insure both that the association is acting on behalf of its members, who are suffering immediate or threatened injury causally related to the harm alleged, and that the injury "will likely be redressed by a favorable decision by the Court." Code § 62.1-44.29. We see no reason or justification to add to these requirements.

We must read the statute so as to be consistent with the rulings in <u>Concerned Taxpayers</u> and <u>Stumpy Lake I</u>. We, therefore, interpret the statute to say that any party seeking judicial review must participate in the public comment process. Thus, in order for an association to seek review, it must participate in the process. If an individual seeks judicial review, that individual must participate in the process. To interpret the statute as appellees argue is contrary to the holdings in these cases.

Representational standing allows an association to appeal, in a representative capacity, solely on behalf of its members.[7] It is a conduit to assert the rights of its members. The United States Supreme Court, commenting on the advantages of representational standing, recognized that certain organizations "suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital." <u>UAW v. Brock</u>, 477 U.S. 274, 289 (1986). The advantages include both "financial resources" and "specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." <u>Id.</u> (quoting Note,

---

[7] We note that an association may also have individual standing. <u>See</u> <u>generally</u> <u>Stumpy Lake I</u>, 46 Va. App. at 115-23, 616 S.E.2d at 45-48.

From Net to Sword: Organizational Representatives Litigating Their Members' Claims, 1974

U. Ill. L. F. 663, 669).

The Brock Court continued:

> In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 187 (1951) (Jackson, J. concurring); see NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 459 (1958) (association "is but the medium through which its individual members seek to make more effective the expression of their views").

477 U.S. at 290.

Thus, reason dictates that, in a representational capacity, the organization speaks on behalf of its members during the public comment process. The organization, with its expertise and resources, is uniquely specialized to efficiently present the issues during the public comment process. The necessity to articulate the concerns of those interested is explained by Code § 62.1-44.15:02.

The purpose of the public comment period is to provide information to the Director to determine if a public hearing is to be held. See Code § 62.1-44.15:02(C). The public comment period gives the public the opportunity to show "[t]hat there is a significant public interest in the [matter,] . . . [t]hat the requesters raise substantial, disputed issues relevant to [the permit in question,] . . . [and] that the action requested is not on its face inconsistent with, or in violation of, the State Water Control Law, federal law, or any regulation promulgated thereunder." Id. If a public hearing is granted and conducted, the Board, in making its decision, shall consider, among other things, verbal and written comments made during the public comment period. See Code § 62.1-44.15:02(P).

The purpose of the public comment process, then, is simply to give interested persons the opportunity to apprise the agency of their concerns and whether those concerns are legitimate. This purpose is satisfied whether the comments are made by individuals or an association.

Thus, we conclude that if an organization meets the Article III, <u>Lujan</u> criteria and if the organization itself participated in the public comment process, that organization has met the statutory requirements under Code § 62.1-44.29 for representational standing. "Standing to sue in their own right," as articulated in <u>Hunt</u>, is satisfied if the Article III, <u>Lujan</u> criteria are met. Individual member participation in the public comment process is not an Article III, <u>Lujan</u> requirement, and CBF's appeal should not have been dismissed for lack of standing.

CONCLUSION

CBF was not required to allege or prove that its individual members had participated in the public comment process. Finding the trial court erred in granting the motion to dismiss, we remand this case to the circuit court for the appeal to be heard on its merits.

<u>Reversed and remanded.</u>