COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Senior Judge Baker
Argued at Norfolk, Virginia


CONCERNED TAXPAYERS OF BRUNSWICK COUNTY,
 J. M. MOSELEY, JERRY L. MARTON, H. BRUCE
 BRANDON, JULIA REAVIS BLANDFORD, JAMES F.
 HITE, CHARLES M. BLAND AND SIDNEY E. BROWN
                                              OPINION BY
v.    Record No. 2180-98-2           JUDGE ROBERT P. FRANK
                                        MARCH 14, 2000
DEPARTMENT OF ENVIRONMENTAL
 QUALITY, DENNIS TREACY, ACTING DIRECTOR
 AND AEGIS WASTE SOLUTIONS, INC.


            FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
                   Robert G. O'Hara, Jr., Judge

            David S. Bailey (David S. Bailey, L.L.C., on
            briefs), for appellants.

            Stewart T. Leeth, Assistant Attorney General;
            (Mark L. Earley, Attorney General; Deborah L.
            Feild, Assistant Attorney General, on brief),
            for appellee Department of Environmental
            Quality, Dennis Treacy, Acting Director.

            Christopher Graham (Timothy G. Hayes;
            Hunton & Williams, on brief), for appellee
            AEGIS Waste Solutions, Inc.



     Concerned Taxpayers of Brunswick County, et al. (appellants)

appeal the Brunswick County Circuit Court's decision finding that

the Department of Environmental Quality (DEQ) and the Director of

DEQ (Director) complied with the requirements of Code

§ 10.1-1408.1(B)(1) in issuing a permit and permit amendments to

AEGIS Waste Solutions, Inc. (AEGIS) authorizing construction and

operation of a solid waste landfill in Brunswick County. Appellants argue that three parcels of land encompassed by the permit and the permit amendments were not certified as complying with all local ordinances as required by Code § 10.1-1408.1(B)(1). We reverse the decision of the circuit court and enter final judgment.

## I.   BACKGROUND

Appellants are an unincorporated organization of Brunswick County taxpayers and property owners and eight individuals who own property adjacent to or within a short distance of a solid waste landfill owned and operated by AEGIS.

In October 1993, as part of the permit application process, AEGIS requested certification from Brunswick County that the proposed facility complied with all local ordinances.  On October 22, 1993, the Planning Director of Brunswick County issued a certification that the "proposed location and operation of the facility is consistent with all ordinances."

On December 6, 1993, AEGIS submitted Part A of the permit application.  The Part A application included the "Near Vicinity Map" which identified the proposed site boundaries of the solid waste management facility.  The "Near Vicinity Map" submitted by AEGIS with the Part A application included three parcels, 53-143A, 63-47, and 63-33A, that were marked by the letter "A" on the map. One of the notes on the map stated that parcels designated by the

letter "A" were under negotiation for inclusion in the site.  DEQ approved the Part A application on March 25, 1994.

AEGIS submitted the Part B application on June 20, 1994.  The Part B application contained a different map, entitled "Proposed Site Features."  The "Proposed Site Features" Map included the three parcels within AEGIS's property boundary that were marked by the letter "A" on the "Near Vicinity Map."

DEQ published a draft permit and held a public hearing on March 6, 1995.  On April 17, 1995, DEQ issued the permit to AEGIS. The permit stated that the "total site property consists of approximately 854 acres."  The approved Part A application acreage was 822 acres.

DEQ granted the first amendment to the permit on December 10, 1997, which allowed a change in classification from industrial disposal to sanitary landfill, a liner design change for the existing landfill, and acceptance by the facility of regulated asbestos-containing material.  The maps submitted by AEGIS for this amendment fully incorporated the three parcels as part of the property and facility boundary.

AEGIS submitted an application for a second permit and included a second local government certification, dated October 9, 1997.  The second certification contained no clarifying language as to the three parcels.  DEQ granted the second permit amendment on May 4, 1998, allowing expansion of the sanitary landfill area by 141 acres.

## II.  ANALYSIS

## A.  Standing

Appellees challenge appellants' standing to appeal under Code § 10.1-1457(B).

Code § 10.1-1457(B) sets forth the requirements for judicial review under the Virginia Waste Management Act (Act). It states:

> Any person who has participated, in person or by the submittal of written comments, in the public comment process related to a final decision of the Board or Director under § 10.1-1408.1 or § 10.1-1426 and who has exhausted all available administrative remedies for review of the Board's or Director's decision, shall be entitled to judicial review thereof in accordance with the Administrative Process Act (§ 9-6.14:1 et seq.) if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution.  A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

Code § 10.1-1400 defines a "person" as "an individual, corporation, partnership, association, a governmental body, a municipal corporation or any other legal entity."

Code § 8.01-15 permits all unincorporated associations to sue and be sued under the name by which they are commonly known.

See Code § 8.01-15. "The words 'unincorporated association' . . . denote a voluntary group of persons joined together by mutual consent for the purpose of promoting some stated objective." Yonce v. Miners Mem. Hosp. Ass'n, 161 F.Supp. 178, 186 (W.D. Va. 1958).

Concerned Taxpayers of Brunswick County describes itself as an "unincorporated association consisting of members who own real property in Brunswick County, Virginia." The organization states that it was "organized and operates for the purpose of advancing the interests of its members."

We find that Concerned Taxpayers of Brunswick County satisfies the Yonce definition of an unincorporated association, and, therefore, qualifies as a "person" pursuant to the definition set forth in Code § 10.1-1400. Members of the association who sued individually clearly are "persons" as defined by the Act.

It is apparent from the record that appellants participated in the submittal of written comments in the public comment process.

Further, once the Director issued the permit for the landfill facility, appellants properly appealed the decision of the Director to the Circuit Court of Brunswick County.

The Act requires appellants to meet the requirements for standing under Article III of the United States Constitution. In Lujan v. Defenders of Wildlife, et al., 504 U.S. 555, 560-61

(1992) (alterations in originals) (citations omitted), the
United States Supreme Court set forth the three requirements for
Article III standing:

> First, the plaintiff must have suffered an
> "injury in fact"-an invasion of a legally
> protected interest which is (a) concrete and
> particularized . . . and (b) "actual or
> imminent, not 'conjectural' or
> 'hypothetical,'" . . . . Second, there must
> be a causal connection between the injury
> and the conduct complained of-the injury has
> to be "fairly . . . trace[able] to the
> challenged action of the defendant, and not
> . . . th[e] result [of] the independent
> action of some third party not before the
> court." . . . Third, it must be "likely," as
> opposed to merely "speculative," that the
> injury will be "redressed by a favorable
> decision."

In Warth v. Seldin, 422 U.S. 490 (1975), the United States
Supreme Court addressed the Article III standing requirements
for associations.  The Court held that an association

> must allege that its members, or any one of
> them, are suffering immediate or threatened
> injury as a result of the challenged action
> of the sort that would make out a
> justiciable case had the members themselves
> brought suit.  So long as this can be
> established, and so long as the nature of
> the claim and the relief sought does not
> make the individual participation of each
> injured party indispensable to proper
> resolution of the cause, the association may
> be an appropriate representative of its
> members, entitled to invoke the court's
> jurisdiction.

Warth, 422 U.S. at 511.

In Hunt v. Washington State Apple Advertising Comm'n, 432
U.S. 333 (1977), the United States Supreme Court developed a

three-prong test for associational standing based on the holding in Warth.  The Court stated an association has Article III standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt, 432 U.S. at 343.

Code § 10.1-1457(B) merely reiterates the requirements set out in Lujan.  Therefore, fulfillment of the tests set forth in Lujan and Hunt results in satisfaction of the standing requirement under Code § 10.1-1457(B).

The first prong of the test for associational standing requires that members of the association have standing to sue in their own right.  See id.  In United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 555 (1996), the Court stated that this prong requires "at least one member with standing to present, in his or her own right, the claim . . . pleaded by the association."  Therefore, at least one member of the association, but not all of the members, must satisfy the Lujan test for Article III standing.

The Lujan test first requires that the injury be "concrete and particularized" and "imminent," not "hypothetical."  See Lujan, 504 U.S. at 560.  The Court defined a particularized

interest as one in which "the injury must affect the plaintiff in a personal and individual way."  Id. at 561 n.1. Environmental interests are legally protected under this standard.  See Sierra Club v. Morton, 405 U.S. 727, 734 (1972). "The 'injury in fact' test requires [however] that the party seeking review be himself among the injured."  Id. at 734-35.

> For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.  At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

Warth, 422 U.S. at 501-02 (citations omitted).

Under the Act, the procedures for issuance of a permit to construct and operate a landfill are designed to prevent "substantial or potential danger to human health or the environment."  Code § 10.1-1408.1(D).

Appellants' allegations, taken as true, indicate that they have environmental, human health, and economic interests at stake.  In their petition for appeal, appellants stated:

> [A]ppellants are harmed by DEQ's action and the approved landfill through decreased property values, potential pollution of groundwater . . ., exposure to waste

> materials and other harms as detailed
> herein. . . .
>
> All members of Concerned Taxpayers
> listed herein rely upon groundwater
> resources for their drinking water needs, a
> use which is threatened by the proposed
> facility's potential for groundwater
> contamination.

Appellants' allegations demonstrate the potential danger to environmental, human health, and economic interests posed by the improper issuance of the permit. We, therefore, find that appellants are subject to a "concrete and particularized" injury as a result of the improper issuance of the permit and the operation of the landfill pursuant to such permit.

Additionally, we believe that appellants have suffered a violation of their procedural rights. Generally, "the person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressability and immediacy." Lujan, 504 U.S. at 573 n.7. In Lujan, the United States Supreme Court illustrated a violation of a procedural right:

> One living adjacent to the site for proposed
> construction of a federally licensed dam has
> standing to challenge the licensing agency's
> failure to prepare an environmental impact
> statement, even though he cannot establish
> with any certainty that the statement will
> cause the license to be withheld or altered,
> and even though the dam will not be
> completed for many years.

Id. We believe that this case is analogous to the Court's example in Lujan, and hold that appellants have suffered injury

because their procedural right to proper governmental certification of the location of the landfill facility was violated by the issuance of the permit and subsequent operation of the landfill.

Lujan next requires that there be a causal connection between the complained of actions and the injury. See id. at 560. Code § 10.1-1408.1(D) states that the Director must determine that the "proposed facility poses no substantial present or potential danger to human health or the environment" prior to the issuance of the permit. Code § 10.1-1408.1(B)(1) requires certification from the local government that the proposed facility is "consistent with all applicable ordinances." Code § 10.1-1408.1(B)(1).

Code § 10.1-1408.1, therefore, supports the inference that the legislature intended the Act to protect environmental and public health interests. DEQ's issuance of a permit without proper certification does not achieve such purpose, nor does operation of the landfill by AEGIS. Therefore, the causal connection between appellants' alleged injuries and the actions of the appellees is clear.

The final requirement under Lujan is the redressability of the injury. See Lujan, 504 U.S. at 561. Invalidation of the landfill permit would result in a cessation of landfilling at the facility, which would protect appellants' environmental, human health, and economic interests. Further, in order to

resume landfilling at the facility, a permit with the requisite certification must be obtained.  Such a permit, as intended by the legislature, would ensure protection for appellants' interests.  We, therefore, find that the individual appellants and members of Concerned Taxpayers satisfy the Lujan test.

Additionally, Concerned Taxpayers must satisfy the second and third prongs under Hunt.  The second prong under Hunt requires that the purpose of the association must be germane to the interests it seeks to protect.  See Hunt, 432 U.S. at 343. Concerned Taxpayers' self-description states that it is composed of Brunswick County landowners and operates to further the interests of its members.  We find that the purpose of Concerned Taxpayers, to protect the property and interests of its members, is germane to its challenge of the permit issued by DEQ to AEGIS, which Concerned Taxpayers alleges will impact its members' property values and potentially pollute its members' groundwater resources.  We, therefore, hold that Concerned Taxpayers has satisfied the second prong under Hunt.

The third prong of the Hunt test states that the claim asserted or the relief sought cannot require the participation of individual members of the association in the lawsuit.  See id.  The Court, in United Food, stated that this prong is a prudential requirement, rather than a constitutional necessity. See United Food, 517 U.S. at 555-56.  Concerned Taxpayers' requests for relief in its appeals to the circuit court stated:

(a) Declare that the Department of Environmental Quality improperly considered the AEGIS permit application complete when there was evidence presented that the certification of compliance with local government ordinances, required by Va. Code § 10.1-1408.1(B)(1), was invalid; or, in the alternative, declare that DEQ failed to follow its own regulations to ensure that the applicant had legal control over the proposed landfill site in the face of evidence that the applicant did not have such control;

(b) Declare that the Department of Environmental Quality failed to make the required independent determination of whether the proposed facility poses any substantial present or potential danger to human health or the environment and to include such conditions or requirements in the solid waste permit to prevent such potential danger in accordance with statutory mandates;

(c) Declare that the DEQ was without authority to consider or approve land parcels for landfill operation or disposal which were not subject to certification by the County;

(d) Declare that the DEQ must provide for the taking of evidence and other attributes of an evidentiary hearing in accordance with Va. Code § 9-6[.]14:12 prior to issuance of any landfill permit pursuant to Va. Code § 10.1-1408.1;

(e) Remand to the Department of Environmental Quality Solid Waste Facility Permit No. 583 until such time as DEQ resolves and corrects the statutory and procedural errors found by the Court;

(f) Award Concerned Taxpayers their costs, including reasonable attorneys fees, expended in this matter, in accordance with Va. Code § 9-6.14:21; and

(g) Grant such other relief in this action as it may deem appropriate.

\*       \*       \*       \*       \*       \*       \*

(a) Declare that the Department of Environmental Quality was without legal authority to consider or approve an application by AEGIS for a major permit amendment which contained land parcels not certified by the local government;

(b) Remand to the Department of Environmental Quality Solid Waste Facility Permit No. 583 and the major amendment of December 10, 1997 until such time as DEQ resolves and corrects the statutory and procedural errors found by the Court, and processes any application by AEGIS in full accordance with the Virginia Code; . . . .

\*       \*       \*       \*       \*       \*       \*

(B) Remand to Department of Environmental Quality Solid Waste Permit No. 583 and the Second Major Permit Amendment of May 4, 1998 until such time as DEQ resolves and corrects the statutory and procedural errors found by the Court, and processes any application by AEGIS in full accordance with the Virginia Code; . . . .

We find that the relief requested by Concerned Taxpayers does not require individualized proof and may be resolved in a group context.

We, therefore, hold that Concerned Taxpayers and it members who brought claims individually, have standing to bring their claims pursuant to Code § 10.1-1457(B) and Article III of the United States Constitution.

## B.  Statutory Analysis

Appellants contend:  1) DEQ lacked authority to consider a solid waste facility permit application complete or to issue the permit when the application contained land parcels which were not certified by the local government pursuant to Code

§ 10.1-1408.1(B)(1) and 2) DEQ lacked authority to consider and issue amendments to the solid waste facility permit because it contained land parcels which were not certified by the local governing body pursuant to Code § 10.1-1408.1(B)(1). We agree with appellants and reverse the decision of the circuit court.

Code § 9-6.14:17 authorizes judicial review of agency decisions. In Johnston-Willis Ltd. v. Kenley, 6 Va. App. 231, 243, 369 S.E.2d 1, 7 (1988), we defined "the appropriate standard of review in terms of the degree of deference to be given to agency decisions." We stated:

> [A]gency findings of fact are to be accorded great deference under the substantial evidence standard of review. However, when deciding whether an agency has followed proper procedures or complied with statutory authority . . . , an inquiry into whether there is substantial evidence in the record to support findings of fact of an agency is wholly inappropriate. Indeed, even though an agency's findings of fact may be supported by substantial evidence in the record, it may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority. See, e.g., Atkinson v. Virginia Alcoholic Beverage Control Commission, 1 Va. App. 172, 336 S.E.2d 527 (1985). Thus, where the legal issues require a determination by the reviewing court whether an agency has, for example, accorded constitutional rights, failed to comply with statutory authority, or failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination.

Johnston-Willis, 6 Va. App. at 243, 369 S.E.2d at 7-8. However, when the question requires an interpretation that is "within specialized competence of the agency," the agency's decision is afforded special deference. Id. at 244, 369 S.E.2d at 8.

In this case, we must determine whether DEQ properly issued the permit for operation of the landfill pursuant to Code § 10.1-1408.1(A). The Act and the Administrative Code clearly state the steps necessary for issuance of a landfill permit. We find that this is a statutory issue. Further, we do not find that determination of the fulfillment of the statutory requirements for the permitting process necessitates the "specialized competence" of DEQ. We, therefore, afford DEQ's decision little deference.

Code § 10.1-1408.1(A) states that no person shall be permitted to operate a landfill for the treatment, disposal or storage of non-hazardous waste without a permit from the Director. See Code § 10.1-1408.1(A). In order to initiate the permit application process, the person proposing to build a new solid waste management facility, modify an existing solid waste management facility or amend an existing permit must file a notice of intent with the Director stating the desired permit or permit amendment, the precise location of the proposed facility, and the intended use of the facility. See 9 Virginia Administrative Code § 20-80-500(B)(1). The notice of intent must be accompanied by area and site location maps. See id.

Code § 10.1-1408.1(B)(1) states that the permit application is not complete unless it contains "[c]ertification from the governing body of the county, city or town in which the facility is to be located and that the location and operation of the facility are consistent with all applicable ordinances."  The Virginia Administrative Code augments the procedure set forth in Code § 10.1-1408.1(B)(1), and states that the certification from the local government must accompany the notice of intent.  See 9 Virginia Administrative Code § 20-80-500(B)(3).  If the location and operation of the facility are certified by the local governing body as consistent with its ordinances, without qualifications, conditions, or reservations, the applicant may submit the application in two parts, Part A and Part B.  See 9 Virginia Administrative Code § 20-80-500(B)(4).  "Part A application provides the information essential for assessment of the site suitability for the proposed facility.  It contains information on the proposed facility to be able to determine site suitability for intended uses.  It provides information on all siting criteria applicable to the proposed facility."  9 Virginia Administrative Code § 20-80-500(C).  "The Part B application involves the submission of the detailed engineering design and operating plans for the proposed facility."  9 Virginia Administrative Code § 20-80-500(D).

In this case, it is undisputed that AEGIS submitted a certification from Brunswick County dated October 22, 1993

stating that the proposed landfill facility complied with all local ordinances.  Appellees argue that this certification fulfilled the statutory requirement under Code § 10.1-1408.1(B). Appellees assert that once DEQ received the certification from Brunswick County, DEQ was under no statutory obligation to investigate whether the facility did in fact comply with all local ordinances.

We believe appellees' argument is flawed.  Chronologically, the notice of intent, accompanied by the certification, initiates the permit application process.  The notice of intent must include a statement as to the precise location of the facility.  If such location is certified by the local government, then the application may be submitted in two parts: Part A and Part B.  Thus, the certification and the permit application are based on the precise location of the facility as designated in the notice of intent.

At the time of the certification and the subsequent submittal of the Part A application, it is undisputed that AEGIS did not own the three land parcels at issue in this case. Appellees concede AEGIS acquired the three parcels after the issuance of the certification and after AEGIS submitted Part A of the permit application but before AEGIS submitted Part B of the application.  The three parcels were included within the property boundaries on the map submitted with Part B of the application.  DEQ was aware that the three parcels were not

acquired by AEGIS until after it submitted Part A of the permit application because the map submitted with Part B stated that the parcels were under negotiation at the time Part A was submitted. DEQ issued the permit to include the property boundaries represented on the maps submitted with the Part B application. We hold that the county certification never included the three after-acquired land parcels. The regulations clearly specify that the permit application process can proceed only as to the parcels included in the certification. We hold, therefore, that the permit application process, i.e. Parts A and B, and, ultimately, the issuance of the permit could proceed only as to those parcels included in the certification.

Appellees argue that the disposal activities at the facility occur within the boundaries authorized by the Part A application approval, and, therefore the facility is consistent with the certification. We believe that by arguing such, appellees are attempting to bifurcate the permit. It is the permit application process, however, that is bifurcated into Parts A and B. The actual permit indicated that the "total site property consists of 854 acres," which includes the three after-acquired parcels. The permit discusses the acreage suitable for disposal as determined during the review of Part A of the application, but does not contain a Part A permit and a Part B permit. There is but one permit, and in this case the three after-acquired parcels were included in the "total site

property" for which the permit was issued. While appellees' argument that disposal only occurs in the 822 acres approved for disposal during Part A of the application process may be correct, it is irrelevant as to the determination of whether the three after-acquired parcels were included in the actual permit.

Appellants contend that DEQ lacked authority to consider and issue amendments to the permit because the permit contained parcels not certified by the local governing body pursuant to Code § 10.1-1408.1(B)(1). We agree.

In Hurt v. Caldwell, 222 Va. 91, 98, 279 S.E.2d 138, 142 (1981), the Supreme Court of Virginia held that a building permit issued by a municipal zoning administrator was a nullity because the permit application did not comply with a local zoning ordinance. Additionally, the Court reversed the trial court's direction to the city to treat the building permit as the initial step in correctly completing the application process pursuant to the ordinance. See id.

From Hurt, we conclude that if a permit is a nullity, one that is void ab initio, the permit cannot be used to create subsequent valid action. If the original permit is void, any subsequent action based on the original permit is void as well. Therefore, we hold that because the original landfill permit was improperly issued in this case and was void, the amendments to that permit also are void.

### III. CONCLUSION

For these reasons, we hold that appellants have satisfied the standing requirement set forth in Code § 10.1-1457(B). Additionally, we hold that DEQ and the Director improperly issued the permit and permit amendments that authorized the landfill facility operated by AEGIS because three parcels which were included in the permit and permit amendments were not certified by the local government pursuant to Code § 10.1-1408.1(B)(1).

<u>Reversed and final judgment.</u>