COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Chafin and Decker
Argued at Richmond, Virginia


WEST CREEK MEDICAL CENTER, INC.

MEMORANDUM OPINION[*] BY

v.      Record No. 0963-13-2

JUDGE GLEN A. HUFF
FEBRUARY 4, 2014

CYNTHIA C. ROMERO, M.D., F.A.A.P.,
 STATE HEALTH COMMISSIONER AND
 BON SECOURS – ST. FRANCIS MEDICAL CENTER, INC.


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Paul M. Peatross, Jr., Judge Designate

Robert L. Hodges (Nathan A. Kottkamp; Thomas J. Stallings;
Jeffrey D. McMahan, Jr.; McGuireWoods LLP, on briefs), for
appellant.

Ishneila G. Moore, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Rita W. Beale, Deputy Attorney
General; Allyson K. Tysinger, Senior Assistant Attorney General,
on brief), for appellee Cynthia C. Romero, M.D., F.A.A.P., State
Health Commissioner.

Matthew D. Jenkins (Elizabeth A. Breen; Hunton & Williams,
LLP, on brief), for appellee Bon Secours - St. Francis Medical
Center, Inc.


West Creek Medical Center, Inc. ("West Creek") appeals a ruling of the Chesterfield

County Circuit Court ("circuit court") dismissing West Creek's appeal of a decision by the State

Health Commissioner ("Commissioner") to issue a certificate of public need ("COPN") in favor

of St. Francis Medical Center, Inc. ("St. Francis").  In dismissing West Creek's appeal, the

circuit court held that West Creek was not an aggrieved party and therefore did not have standing

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to appeal the Commissioner's decision because the administrative record was devoid of any evidence of harm to West Creek.

On appeal, West Creek contends that the circuit court erred by 1) requiring West Creek to present evidence of harm in order to prove its standing, 2) holding that West Creek was not aggrieved and lacked standing, and 3) denying West Creek its right to an evidentiary hearing on the issue of standing. In an assignment of cross-error, the Commissioner contends that the circuit court erred by overruling the Commissioner's motion to dismiss and plea of sovereign immunity and finding that West Creek was a proper party to appeal St. Francis's COPN award. For the following reasons, this Court reverses the decision of the circuit court and remands the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

On appeal, "[w]e view the facts in this case 'in the light most favorable to sustaining the [Commissioner's] action and take due account of the presumption of official regularity, the experience and specialized competence of the [Commissioner], and the purposes of the basic law under which the [Commissioner] has acted.'" Nat'l College v. Davenport, 57 Va. App. 677, 680-81, 705 S.E.2d 519, 521 (2011) (alterations in orginal) (quoting Sentara Norfolk Gen. Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999)).  So viewed, the evidence is as follows.

Under Code § 32.1-102.3(A), any person who wishes to provide medical services in the Commonwealth of Virginia must first obtain a COPN from the Commissioner by demonstrating the existence of a public need for the services proposed.  West Creek and St. Francis both applied to the Commissioner for a COPN to provide the same services – acute care beds – in the

same planning district – PD 15.[1]  Accordingly, the Commissioner deemed the two applications "Competing Applications," defined as "applications for the same or similar services and facilities that are proposed for the same planning district or medical service area and which are in the same review cycle."  12 VAC 5-220-10.

West Creek's application requested to establish a new hospital, with 97 acute care beds, in Goochland County.  Acknowledging an underutilization of existing beds in PD 15, West Creek proposed the relocation of 97 beds from another HCA[2] hospital in PD 15, Retreat Hospital, as part of its application.  St. Francis's application, on the other hand, claimed an institutional need for more beds and proposed to add 54 beds to its existing hospital in Chesterfield County.

Through her adjudication officer, the Commissioner held an informal fact finding conference ("IFFC") in which both West Creek and St. Francis argued for the approval of their COPN applications and the denial of the other's.  At this conference, West Creek argued that granting St. Francis a COPN would exacerbate a surplus of acute care beds in PD 15, thereby harming West Creek through decreased utilization and increased costs.  In support of this argument, West Creek introduced evidence that the average bed occupancy in PD 15 in 2007 was 54.8%, while the State Medical Facilities Plan standard was 85%.  Further, from 2004 to 2006, PD 15 saw a steady decline in bed occupancy.  West Creek also introduced evidence that in 2007, St. Francis was licensed for 130 acute care beds in PD 15, but only had an average occupancy of 63.1%; nevertheless, St. Francis's COPN application was requesting a 42% increase in beds.

---

[1] The Commonwealth of Virginia is divided into "health planning regions" and smaller "planning districts."  Code § 32.1-102.1; 12 VAC 5-220-10.

[2] West Creek is a subsidiary of the Hospital Corporation of America.

Furthermore, West Creek's and St. Francis's service areas significantly overlap each other. West Creek presented testimonial evidence that, based on St. Francis's current bed occupancy averages, its projected "11.2% [bed occupancy] growth rate is either totally unrealistic or predatory or both." Indeed, "the only way St. Francis could begin to approach their utilization projections is by diverting patients from other hospitals" in its service area, like West Creek.

In his recommendation to the Commissioner,[3] the hearing adjudication officer commented on the competition for patients between West Creek and St. Francis, stating that "[e]ach project, and each applicant's opposition to the other's, reflects a keenly-interested effort to maintain and enhance an established presence in a growing area of a metropolitan region." Indeed, "[St. Francis] and [West Creek] compete in an energetic manner in the health care marketplace of PD 15." He further commented that "considerable shortages of health care workers . . . are projected to last and worsen for the next several years in Virginia. As a general principle, competition for scarce resources does not lower costs associated with them." Notwithstanding the increase in competition between West Creek and St. Francis, the hearing adjudication officer recommended that the Commissioner approve both applications for a COPN.

On November 10, 2008, the Commissioner "reviewed and adopted the . . . findings . . . of the adjudication officer," approving both West Creek's and St. Francis's applications. The Commissioner conditioned West Creek's approval, however, on the requirement that it relocate

---

[3] The hearing adjudication officer addressed 21 statutory factors, as was required by Code § 32.1-102.3 at the time of the hearing, in his recommendation to the Commissioner. This code section, however, has since been amended to include only eight statutory factors. Code § 32.1-102.3.

1.25 beds from Retreat Hospital for every new bed established in the Goochland hospital.[4] St. Francis's COPN did not have a similar condition.

Pursuant to the Virginia Administrative Process Act ("VAPA"), West Creek appealed the Commissioner's decision to award a COPN in favor of St. Francis to the circuit court. St. Francis and the Commissioner both filed motions to dismiss West Creek's petition for appeal, arguing that West Creek failed to allege in its petition that it was aggrieved by the Commissioner's decision. The circuit court subsequently granted West Creek's motion for leave to amend its petition for appeal over objections by St. Francis and the Commissioner.

In its amended petition, West Creek alleged the following to support its standing to appeal the Commissioner's decision:

> 7. First, [West Creek] was a competing applicant against [St. Francis's] COPN application, in the same competitive batch cycle, seeking to establish the same services as [St Francis] in the same planning district. The Commissioner's case decision awarding a COPN to [St. Francis] addressed [West Creek] at the same time – addressing the merits of both. Indeed, the Commissioner's adjudication officer's report, which the Commissioner adopted, addressed both the [St. Francis] and [West Creek] projects collectively in a single report. The Commissioner's decision granting [St. Francis] a COPN will reduce utilization at [West Creek] and harm [West Creek's] financial interests.
>
> 8. Second, [West Creek] will provide the same services that [St. Francis] proposes to provide in the same PD . . . . [West Creek] is relocating existing, approved beds in the same PD 15 as [St. Francis] . . . . There is substantial overlap in [St. Francis's] and [West Creek's] service areas . . . . Approval of additional beds at [St. Francis] will reduce volume at [West Creek] and will reduce [West Creek's] share of the limited set of beds within the PD

---

[4] In so holding, the Commissioner stated the transcript of the IFFC proceeding "suggests a mutual recognition that the delicensure [sic] of 1.25 beds at Retreat for every bed to be constructed at [West Creek] is an appropriate means to begin addressing the surplus of beds that exist . . . in PD 15 . . . ." At the IFFC, the hearing adjudication officer asked the president of HCA whether it would be willing to give "1.25 beds [from Retreat Hospital] for [each] one" established at West Creek, to which the president replied "I would just generally comment that we would be willing to look at additional beds; however, we do not agree we should shut down one of our existing facilities."

inventory thereby increasing [St. Francis's] market share at the expense of [West Creek] . . . . Furthermore, with total patient days in PD 15 declining, additional beds at [St. Francis] can only be filled by patients served at other hospitals, such as [West Creek], and approval of [St. Francis's] project will reduce utilization at [West Creek] thereby increasing operational costs and reducing revenues . . . .

9. In light of the foregoing, and as required by the COPN law and regulations, the Commissioner considered the effect [St. Francis's] and [West Creek's] projects would have on each other.

10. Finally, the ability to operate hospital beds is restricted within the Commonwealth by the COPN law and regulations. The Commissioner's approval of [St. Francis's] COPN places a burden on [West Creek], which is a holder of specialized permission to operate hospital beds, by increasing competition and reducing [West Creek's] market share, utilization, and revenues.

St. Francis and the Commissioner again filed motions to dismiss West Creek's amended petition for appeal for lack of standing. The circuit court, however, overruled the motions, finding West Creek sufficiently pled standing and permitted West Creek to proceed to the merits of its appeal. At the hearing on the merits, St. Francis and the Commissioner alleged that West Creek's allegations of harm were not supported by any facts contained in the administrative record. Consequently, the circuit court ordered the parties to submit supplemental briefs on the issue of standing. Specifically, the circuit court ordered West Creek "to point to the record with specificity of the evidence of harm that would occur that the Commissioner found by granting the COPN in favor of St. Francis."

After the parties filed their supplemental briefs, the circuit court dismissed West Creek's appeal for lack of standing, finding that West Creek "had the burden to present evidence of harm, actual or potential, to the Commissioner. The record in this case is devoid of that evidence." This appeal followed.

## II. ANALYSIS

West Creek presents three assignments of error on appeal. First, West Creek argues the circuit court erred in requiring it to present evidence of harm in order to prove it had standing to appeal. Second, West Creek argues the circuit court erred in holding that West Creek was not aggrieved and therefore lacked standing. Lastly, West Creek argues the circuit court erred in denying West Creek's right to an evidentiary hearing on the issue of standing.

The Commissioner presents two assignments of cross-error on appeal. First, the Commissioner contends that the trial court erred by overruling the Commissioner's plea of sovereign immunity. Second, the Commissioner contends the circuit court erred in finding that West Creek was a proper party to appeal the Commissioner's decision.

### A. Standing

"'Standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action.'" Biddison v. Marine Res. Comm'n, 54 Va. App. 521, 527, 680 S.E.2d 343, 346 (2009) (quoting Andrews v. Am. Health & Life Ins. Co., 236 Va. 221, 226, 371 S.E.2d 399, 402 (1988)). Thus, when evaluating whether a party has standing, this Court is "not concerned with whether or not a party will ultimately prevail on the legal merits of an issue." Id. Rather, the only question is "the ability of a party to seek redress through the courts in the first place by demonstrating sufficient connection to, and actual or potential harm from, the law or action challenged." Id.

When determining if a party has standing to appeal a decision by the Commissioner to issue a COPN, this Court looks to the VAPA. Health Sys. Agency of N. Va. v. Stroube, 47 Va. App. 299, 309, 623 S.E.2d 444, 449 (2005). Under the VAPA, "any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to direct review thereof by . . . court action." Code

§ 2.2-4026. West Creek purports to be a "party aggrieved" challenging a case decision pursuant to the VAPA. Thus, this Court is "presented with a question of statutory interpretation and, ultimately, a question of standing – a question of law we review *de novo*." Reston Hosp. Ctr. v. Remley, 59 Va. App. 96, 105-06, 717 S.E.2d 417, 422 (2011).

Accordingly, this Court must ask whether a party like West Creek is one that the legislature intended to allow access to the courts in cases like the one before us today. See Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (legislative intent guides our interpretation of a statute). This Court "must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." Id. (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)). Furthermore, to understand the legislature's intent, this Court must consider the entire statutory scheme enacted by the legislature on this particular subject. Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 461-62 (2007) ("'It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957))). Finally, this Court presumes that the legislature is aware of, and acquiesces to, our cases interpreting its enactments. Scott, 58 Va. App. at 49, 707 S.E.2d at 24 (citation omitted).

West Creek's first assignment of error asserts that the circuit court erred in requiring West Creek to present to the Commissioner evidence of harm in order to prove its standing on appeal. Specifically, West Creek argues the circuit court erred in requiring West Creek to point to the administrative record where it introduced "evidence of harm that would occur that the commissioner found by granting the COPN in favor of St. Francis."

- 8 -

"On a motion to dismiss an administrative appeal based on standing, where, as here, the circuit court has not taken any evidence on the allegations contained in the petition, 'we treat the factual allegations in the petition as we do on review of a demurrer.'" Reston, 59 Va. App. at 109, 717 S.E.2d at 424 (quoting Clark, 281 Va. at 686, 709 S.E.2d at 154). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Bd. of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Thus, in reviewing the circuit court's conclusion on standing, "[w]e accept as true all facts properly pleaded in the [petition for appeal] and all reasonable and fair inferences that may be drawn from those facts." Id.; see also Chesapeake Bay Found., Inc. v. Commonwealth ex. rel. State Water Control Bd., 46 Va. App. 104, 109 n.1, 616 S.E.2d 39, 41 n.1 (2005) ("'For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting Concerned Taxpayers of Brunswick Cnty. v. Dep't of Envtl. Quality, 31 Va. App. 788, 796-97, 525 S.E.2d 628, 632 (2000))).

In the present case, the circuit court initially ruled that West Creek sufficiently pled standing, and the case proceeded to the merits. Shortly thereafter, however, the circuit court ordered the parties to file supplemental briefs regarding the issue of standing. Specifically, the circuit court directed West Creek to "point to the record with specificity of the evidence of harm that would occur *that the commissioner found* by granting the COPN in favor of St. Francis." (Emphasis added). After the supplemental briefs were submitted, the circuit court dismissed West Creek's appeal for lack of standing, without receiving any evidence on the issue of standing, stating that West Creek "had the burden to present evidence of harm, actual or potential, to the Commissioner. The record is devoid of that evidence."

Because the circuit court in the present case had not received any evidence regarding West Creek's allegations of standing, it was required to decide the issue of standing at the demurrer stage – accepting as true all properly pled allegations in West Creek's petition for appeal. Reston, 59 Va. App. at 109, 717 S.E.2d at 424 ("On a motion to dismiss . . . [for lack of] standing, where, as here, *the circuit court has not taken any evidence on the allegations contained in the petition*, 'we treat the factual allegations in the petition as we do on review of a demurrer.'" (emphasis added) (quoting Clark, 281 Va. at 686, 709 S.E.2d at 154)).

The circuit court, however, did not do this. Instead, it imposed the additional requirement that West Creek "had the burden to present evidence of harm, actual or potential, to the Commissioner." In imposing this additional requirement, the circuit court relied on the following language from Reston: "Once Reston had brought to the Commissioner's attention plausible evidence of appreciable harm to the utilization and efficiency of its facility and services, the Commissioner was required to consider the potential harm to Reston." 59 Va. App. at 113-14, 717 S.E.2d at 426.

The circuit court's reliance on this language is misplaced. In Reston, this Court was not holding that the Commissioner was required to find harm before a party has standing to appeal; indeed, a Commissioner's conclusions regarding allegations of harm by a party "are immaterial to the standing inquiry, in both this Court and the circuit court below." Id. at 110, 717 S.E.2d at 425. Rather, this Court was holding that if evidence of harm was presented, then the Commissioner was required to "consider" that evidence in determining whether the proposed services are the most efficient way to meet a public need. Id. at 113-14, 717 S.E.2d at 426. Consequently, the circuit court inappropriately relied on Reston to hold that West Creek "had the burden to present evidence of harm, actual or potential, to the Commissioner."

Moreover, evidence that West Creek would be harmed from granting a COPN in favor of St. Francis is not always probative to the Commissioner, who is tasked only with determining whether the COPN would meet a "public need." Code § 32.1-102.6. In fact, the adjudication officer in the present case stated that "the only question properly before [it] is whether each project would reasonably meet a public need" and that West Creek's arguments regarding the harm it would face "are less helpful in making public need determinations than [West Creek] appear[s] to presume." Indeed, the parties are not tasked with presenting evidence of potential harm to the Commissioner, but rather evidence that the projects either would or would not meet a public need. See Code § 32.1-102.6(D).

Accordingly, the circuit court erred by holding that West Creek had the burden to present such evidence to the Commissioner. By doing so, the circuit court required what this Court specifically held was improper. See Reston, 59 Va. App. at 110, 717 S.E.2d at 425 (holding that the Commissioner's findings regarding standing allegations "are immaterial to the standing inquiry, in both this Court and the circuit court below"). If the law were as the circuit court stated, then "the Commissioner could purposely immunize herself from appellate review" by failing to find any potential harm. Id. at 114, 717 S.E.2d at 427.

Considering West Creek's petition for appeal under the demurrer standard, this Court finds that West Creek pleaded sufficient facts to establish it is "aggrieved" and therefore has standing to appeal the Commissioner's decision. "It is incumbent upon the appellant to plead facts sufficient to demonstrate standing." Id. at 110, 717 S.E.2d at 424 (citing Chesapeake Bay Found., 46 Va. App. at 120, 616 S.E.2d at 47). In reviewing these pleadings, this Court "accept[s] as true all facts properly pleaded in the [petition for appeal] and all reasonable and fair inferences that may be drawn from those facts." Glazebrook, 266 Va. at 554, 587 S.E.2d at 591; see also Chesapeake Bay Found., 46 Va. App. at 109 n.1, 616 S.E.2d at 41 n.1 ("'For the

- 11 -

purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting Concerned Taxpayers of Brunswick Cnty., 31 Va. App. at 796-97, 525 S.E.2d at 632)).

Given this posture, this Court recognizes that we do not defer to the Commissioner's ultimate factual conclusions used to support her licensing decision. Reston, 59 Va. App. at 110, 717 S.E.2d at 424. "Those findings are separate from the legal inquiry involved in evaluating the sufficiency of the facts to prove standing, as those facts were pled in the petition to the circuit court." Id. at 110, 717 S.E.2d at 425. Thus, "the Commissioner's conclusions regarding the allegations contained in the petition for appeal are immaterial to the standing inquiry, in both this Court and the circuit court below." Id.

Accordingly, for West Creek to have standing to appeal, its pleadings must have alleged sufficient facts to show it is "aggrieved," Code § 2.2-4026, and to be aggrieved, West Creek must show that it has

> "some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest. Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. The word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally."

Clark, 281 Va. at 687, 709 S.E.2d at 155 (citations omitted) (quoting Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals, 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986)).

In Reston, this Court held that Reston Hospital Center had sufficiently pled standing to appeal a decision of the Commissioner by pleading that granting a COPN to another hospital to

- 12 -

provide the same services in the same planning district would cause it to "suffer an appreciable reduction in utilization and efficiency." 59 Va. App. at 111, 717 S.E.2d at 425. Indeed, this alleged reduction in utilization and efficiency gave Reston a "direct interest in the subject matter of the proceeding" it sought to attack, "and not a remote or indirect interest." Clark, 281 Va. at 687, 709 S.E.2d at 155.

In the present case, West Creek's amended petition for appeal alleges that given the Commonwealth's restrictions for operating hospital services under the COPN laws, granting St. Francis's application for a COPN will harm West Creek "by increasing competition and reducing [West Creek's] market share, utilization, and revenues." In support of these conclusions, West Creek's petition for appeal alleged a "substantial overlap" of St. Francis's and West Creek's service areas and an already low utilization of existing beds in PD 15. West Creek reasoned in its amended petition for appeal that given the low utilization of existing beds in PD 15, the approval of additional beds at St. Francis, without requiring that St. Francis sacrifice beds elsewhere, will further lower utilization of beds at all hospitals in PD 15, including West Creek. The petition for appeal continues by alleging that this decreased utilization will "increas[e] operational costs and reduce revenues . . . ." Moreover, West Creek alleged that "additional beds at [St. Francis] can only be filled by patients served at other hospitals, such as [West Creek]," thereby further reducing utilization and increasing operating costs for West Creek.

Accepting "as true all facts properly pleaded in the petition for appeal and all reasonable and fair inferences that may be drawn from those facts," Glazebrook, 266 Va. at 554, 587 S.E.2d at 591, West Creek's petition for appeal is sufficient to show it is aggrieved for the purposes of standing. The allegations in West Creek's petition for appeal are similar to those alleged by Reston Hospital Center in Reston. Indeed, both West Creek and Reston alleged that the harm they would suffer amounted to a decrease in utilization and efficiency of their services and an

- 13 -

increased financial burden. As in Reston, West Creek has "plausibly alleg[ed] that its competing facility and services would suffer an appreciable reduction in utilization and efficiency." Reston, 59 Va. App. at 111, 717 S.E.2d at 425. It is a "reasonable and fair inference," Glazebrook, 266 Va. at 554, 587 S.E.2d at 591, that allowing St. Francis to add additional acute care beds in the same planning district as West Creek will reduce West Creek's utilization of beds and harm its financial interests. This is especially true considering the substantial overlap in West Creek's and St. Francis's service areas.

These factual pleadings establish that West Creek has an "immediate, pecuniary and substantial interest" in the Commissioner's decision to grant a COPN in favor of St. Francis. Clark, 281 Va. at 687, 709 S.E.2d at 155. West Creek is not seeking to advance "some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated." Id. Rather, the Commissioner's decision "impos[es] . . . a burden or obligation upon [West Creek] different from that suffered by the public generally." Id. Accordingly, this Court holds that West Creek has sufficiently pleaded facts that establish it is aggrieved for the purposes of standing.[5]

### B. Party to the Case

In an assignment of cross-error, the Commissioner argues that the circuit court erred in determining that West Creek was a party to the case, and therefore should not have allowed West Creek's appeal to proceed to the merits. Specifically, the Commissioner argues that West Creek

---

[5] In addition to arguing that it has standing because it is aggrieved, West Creek also relies on Reston to argue that it has standing "'simply by virtue of the fact that [the Commissioner] was required by statute to consider the . . . effect'" St. Francis's application would have on West Creek. Reston, 59 Va. App. at 112, 717 S.E.2d at 425 (quoting Biddison, 54 Va. App. at 531, 680 S.E.2d at 348). Because this Court narrowly holds that West Creek's pleadings, accepted as true, demonstrate it is aggrieved for the purposes of standing, we make no conclusions regarding this broader argument. See Morris v. City of Va. Beach, 59 Va. App. 172, 180, 707 S.E.2d 479, 482 (2011) (noting this Court decides cases on "'the best and narrowest ground available'" (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010))).

was not a party to the case of the Commissioner's decision to grant a COPN in favor of St. Francis.[6]

To appeal a case decision under the VAPA, "two things must be true . . . the person must be *a party to the administrative proceeding* from which the case decision arises, and the person must be aggrieved." Reston, 59 Va. App. at 108, 717 S.E.2d at 424 (emphasis added) (interpreting Code § 2.2-4026). "A 'named party' who loses an agency case decision ordinarily can seek judicial review under [the] VAPA." Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd P'ship, 51 Va. App. 583, 591, 659 S.E.2d 561, 565 (2008). While West Creek won approval of its COPN, it lost in its opposition to St. Francis's.

Despite the Commissioner's argument before this Court that West Creek was not a party to the case, the Commissioner conceded before the circuit court in its motion to dismiss and plea of sovereign immunity that West Creek "was a named party in the administrative proceeding." Consequently, the Commissioner's cross-error fails because the Commissioner cannot approbate and reprobate by taking inconsistent positions before the circuit court and this Court on appeal. See Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (A party "'may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" (quoting Cangiano v. LHS Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006))).[7, 8.]

---

[6] Interestingly, St. Francis concedes on brief that West Creek is a party to the case. (St. Francis's Br. at 21).

[7] The Commissioner also asserts on appeal that the circuit court should have granted the Commissioner's plea of sovereign immunity. Specifically, the Commissioner argues the Commonwealth has not expressly waived its sovereign immunity for a non-aggrieved party to appeal a decision of the Commissioner. This Court holds, however, that West Creek has sufficiently pled its aggrieved status. Accordingly, it is an aggrieved party and has a statutory right to judicial review of the Commissioner's decision under Code § 2.2-4026.

[8] Because this Court holds that West Creek sufficiently pleaded its aggrieved status for the purposes of standing, we need not address West Creek's second and third assignments of

IV.  CONCLUSION

For the foregoing reasons, this Court holds that the circuit court erred in dismissing West Creek's appeal for lack of standing.  Therefore, this Court reverses the ruling of the circuit court and remands for further proceedings consistent with this opinion.

Reversed and remanded.

---

error that the circuit court erred in holding that West Creek was not aggrieved and that the circuit court erred in denying West Creek's motion for an evidentiary hearing.  See Morris, 59 Va. App. at 180, 707 S.E.2d at 482 (noting this Court decides cases on "'the best and narrowest ground available'" (quoting Armstead, 56 Va. App. at 576, 695 S.E.2d at 564)).